STATE OF NEW HAMPSHIRE

COOS, SS                                           SUPERIOR COURT

Ron L. Beaulieu & Co., Inc. and Ron L. Beaulieu, Individually,
Tri-County Community Action Program, Inc. as Assignee of Ron Beaulieu & Co., Inc.
and Ron L. Beaulieu Individually

vs.

Philadelphia Insurance Company, Philadelphia Indemnity Insurance Company and
Philadelphia Consolidated Holding Corp.

Docket No. _____

**COMPLAINT**

NOW COME the plaintiffs, Ron L. Beaulieu & Co., Inc. and Ron L. Beaulieu,

Individually [hereinafter "Beaulieu"], Tri-County Community Action Program, Inc. as Assignee

of Ron Beaulieu & Co., Inc. and Ron L. Beaulieu Individually [hereinafter "TCCAP"]

(collectively "Plaintiffs"), by and through their attorneys, Devine, Millimet & Branch,

Professional Association and submit this Complaint against defendants Philadelphia Insurance

Company, Philadelphia Indemnity Insurance Company and Philadelphia Consolidated Holding

Corp. a/k/a Philadelphia Insurance Companies a member of the Tokyo Marine Group

[hereinafter "Philadelphia"].  In support of their Complaint, Plaintiffs state as follows:

**PARTIES**

1.      Plaintiff Beaulieu is a certified public accountant with a principal place of

business at 41 Bates Street in the City of Portland and State of Maine.

2.      Plaintiff TCCAP is a voluntary corporation and charitable trust with a principal

place of business in Coos County operating as a Community Action Program.  TCCAP is a

locally managed non-profit agency established under the Economic Opportunity Act of 1964

charged with providing a wide variety of programs for the economically disadvantage in Grafton,

Carroll and Coos counties.

3.      Defendant Philadelphia is an insurance company with a principal place of

business at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania licensed to write insurance

policies in Maine and New Hampshire.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under RSA 491:22 and RSA 491:7.

5.      Coos County is the proper venue for this action because plaintiff TCCAP's

principal office is located in Coos County and all of the complained of acts in the lawsuit

underlying and triggering this coverage action were committed in Coos County.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      TCCAP started as a local community action program in May of 1965 to

administer new government "war on poverty" programs aimed at attacking the causes of poverty

and helping the poor become economically independent.  Over the past half century the scope of

programs operated and administered by TCCAP in northern New Hampshire are significant and

varied including Head Start, fuel assistance, rural transportation and medical services for

qualifying individuals.  The annual budget over the years had grown to $18,000,000 and staff

exceeded 230 workers.

7.      TCCAP is governed by a Board of Directors with seats allocated among

government officials, low income people and the public at large.  The bylaws establish hat

certain directors also serve as officers: chairperson (president), vice-chairperson, secretary, and

treasurer.  The officers also serve as the executive committee of the Board of Directors.

8.     Numerous government funding agencies require that community action programs such as TCCAP provide annual audits of their activities so as to assure the funding agencies that the designated funds are being used efficiently and appropriately.  The purpose of audits is to ensure that funds are properly used, proper financial management tools are in place, and that management is appropriately allocating and utilizing its resources.  If the audit discloses material weaknesses and/or deficiencies in the organization's internal controls, systems, procedures or management it is required to issue a "modified opinion" in a management letter as to allow these material weaknesses and/or deficiencies to be addressed and allow the Board of Directors and Management to take corrective action.

9.     Beaulieu was retained by TCCAP to provide fiscal year auditing and accounting services beginning in 2008 and did so through the fiscal year 2011.

10.     The 2011 and prior audits misstated the financial condition of the agency and failed to disclose substantial deficiencies in the way TCCAP was being operated in management letters.

11.     The Director of Charitable Trusts became aware of TCCAP's financial distress in December of 2012 and arranged for the appointment of a Special Trustee by the probate court to oversee the activities of TCCAP.  The Special Trustee in turn appointed new members to the Board of Directors and new management for TCCAP in 2013.  The Special Trustee retained another firm to perform TCCAP's 2012 audit because of "serious reporting concerns with audits…conducted [by Beaulieu]".  The Special Trustee notified Beaulieu of termination of their engagement by email on January 15, 2013.  The email advised Beaulieu that TCCAP was in "a serious financial crisis" and "at the heart of that crisis is the [Beaulieu] audit."  The Special

Trustee suggested that Beaulieu place its insurance carrier on notice of "potential claims" from

TCCAP based on the Beaulieu audits, as determined by subsequent audits and investigations.

12.   By certified mail dated June 2, 2014, Robert S. Carey, counsel to the Special

Trustee and TCCAP sent a formal "claim" on Orr & Reno letterhead summarizing the nature and

extent of TCCAP's claims for damages based on breach of contract and professional negligence

resulting from the lack of a proper and reliable audit during Beaulieu's tenure.  At this point

subsequent audits had been completed.

13.   Beaulieu was covered for professional liability under a continuous claims made

insurance forms since at least January of 2012 through the last renewal of 2015.

14.   The coverage clause of the initial policy issued by Philadelphia to Beaulieu and

each subsequent renewal required Philadelphia to pay on behalf of the insured:

> "Those sums … the **INSURED'S**  [sic] becomes legally obligated
> to pay as **DAMAGES** as a result of **CLAIMS** first made against
> the **INSURED'S** [sic] … provided the **CLAIM** is first made
> during the **POLICY PERIOD** and written report of the **CLAIM** is
> received by the Company during the **POLICY PERIOD** or within
> sixty days thereafter." [1]

15.   The term "CLAIM" is defined in the policy as:

> "[A] demand made upon the insured for damages including but not limited
> to service of suit or institution of arbitration proceedings against any
> insured."

16.   The definition of "CLAIM" also contains a provision commonly known

as a telescope or interrelated acts provision, which states that:

> "All **CLAIMS** arising out of the same act, errors or omissions, which are
> logically or causally connected in anyway shall be deemed a single
> **CLAIM**.  All such **CLAIMS** whenever made shall be considered first
> made on the date on which the earliest **CLAIM** arising out of such act,

---

[1] The bolded terms in the professional liability coverage clause are defined in the policy.

error or omission was first made and all such **CLAIMS** are subject to the limits of liability and deductible."

17. A provision entitled "Reporting of Potential Claims" -- allows insureds to lock in coverage in the policy year that the insured learns of circumstances that may result in a claim -- the provision in pertinent part states:

> "If during the **POLICY PERIOD** any **INSURED** first becomes aware of a potential **CLAIM** (i.e. any act, error or omission which might reasonably give rise to a **CLAIM** against any **INSURED** under this Policy) and the **INSURED** gives immediate written notice of such act, error or omission to the Company during their **POLICY PERIOD**, any **CLAIMS** subsequently made against any **INSURED** by reason of any act, error or omission shall be considered to have been made during the **POLICY PERIOD**."

18. The defined term **"DAMAGES"** means "Monetary compensation for past harms or injuries...."

19. The term **"POLICY PERIOD"** is defined to mean:

> "The period from the effective date of this policy to the expiration date as set forth in the declarations or earlier termination date if any of this policy."

20. The term **"PROFESSIONAL SERVICES"** is defined to mean:

> "...services performed or advice given by any **INSURED** to others for a fee or otherwise in the conduct of the **INSURED'S** practice as an accountant...."

21. The initial policy form and all subsequent renewals include a **CONDITIONS** section which define the insured's duties precedent to coverage as follows:

> "If a **CLAIM** is made against an **INSURED** or any **INSURED** becomes aware of any potential **CLAIM** in accordance with **INSURING AGREEMENT IV** the **INSURED** must give prior written notice to the Company.

22.     Beaulieu reported "the claim" to Philadelphia and forwarded the claim letter from Attorney Carey in June of 2014.

23.     Philadelphia issued a claim denial on June 27, 2014 denying coverage to Beaulieu on the grounds that "… the claim was first made during the policy period beginning January 1, 2013 to January 1, 2014…[and should have been ] reported during this period."

24.     The "CLAIM" as that term is defined in the policy was "first made" when Attorney Carey sent the certified mail notice to Beaulieu on June 4, 2014 and timely forwarded to Philadelphia within days.

25.     Philadelphia alternatively asserted a forfeiture of coverage based upon a breach of the condition regarding the insured's duties precedent to coverage because Beaulieu had notice by email of a "potential" claim which "…had to be reported to Philadelphia during the policy period (1-1-2013 to 1-1-2014) in which the email was received.

26.     Nothing in the policy form requires that the "claims" made coverage will be forfeit because notice of a potential claim is not forwarded to Philadelphia in the same policy term that it is received by the insured claiming coverage.

27.     Moreover the term in all of the policy forms referencing "this policy" must be reasonably construed as is the custom and practice in the industry to include the initial policy and subsequent "renewals."

28.     By Complaint dated October 23, 2015 in Coos County Superior Court (which was ultimately removed to the United States District Court for the District of New Hampshire on December 1, 2015) plaintiff TCCAP brought suit against defendant Beaulieu seeking damages from the former accountant and auditor of TCCAP as a result of "glaring deficiencies in the audit procedure and report provided by [Beaulieu] from 2008 to 2011 [where the] 'audit' failed to

disclose fundamental deficiencies in the financial management of TCCAP including but not limited to fundamental internal control weaknesses." See Introduction to Complaint Tri-County Community Action Program, Inc. v. Ron L. Beaulieu & Company and Ron L. Beaulieu Individually, Case No. 214-2015-CV-00108. The Complaint in four separate counts set out causes of actions for accounting and auditing malpractice -- negligence, accounting and auditing malpractice -- breach of contract, wanton recklessness and violation of the Consumer Protection Act, RSA 358-A alleging that Beaulieu failed to conduct a proper audit and failed to provide a management letter or opinion with regard to operating deficiencies as required resulting in TCCAP continuing to use deficient accounting principles procedures and as a result financial losses amounting to in excess of $1.3 million.

29.     Because of Philadelphia's wrongful denial of coverage, Beaulieu was forced to defend the TCCAP claim at his own substantial expense.

30.     On June 9, 2017 Beaulieu and TCCAP entered into an agreement resolving all claims against Beaulieu for $1.3 million which represents the amount of the loss sustained by TCCAP.

31.     On June 13, 2017 the U.S. District Court for the District of New Hampshire entered judgment based upon the agreement.

32.     Beaulieu has paid a portion of the judgment. Beaulieu has also assigned to TCCAP its right to bring an action against Philadelphia to seek coverage for the claims alleged by TCCAP against Beaulieu for the damages sustained as a result of deficiencies in the performance of professional accounting and auditing services and to enforce the judgment and recover the balance not paid by Beaulieu against the defendant Philadelphia.

33.     Beaulieu retained the right to recover extra contractual damages and attorney's fees and costs expended in the defense of the TCCAP lawsuit and the prosecution of the instant Complaint.

34.     Beaulieu and TCCAP now bring this action seeking a declaration in accordance with RSA 491:22 that the defendant Philadelphia breached its contractual duties by failing to provide coverage to Beaulieu for the TCCAP lawsuit, extra contractual damage, attorney's fees expended by Beaulieu in defending the TCCAP lawsuit, and attorney's fees and other expenses incurred or to be incurred by Beaulieu in connection with this lawsuit.

## COUNT I (Declaratory Judgment Pursuant to RSA 491:22)

35.     Beaulieu and TCCAP restate and reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

36.     Beaulieu was acting in his capacity as an accountant in connection with the within referenced auditing engagement with TCCAP.

37.     The insurance policy issued by defendant Philadelphia extends coverage to Beaulieu in that capacity and entitled Beaulieu to the provision of a defense and the payment to TCCAP of damages arising out of the professional services engagement.

38.     Beaulieu and TCCAP are entitled to a declaration in accordance with RSA 491:22 that the insurance policy issued by defendant Philadelphia covers Beaulieu for the damage claims asserted and proven up by TCCAP against Beaulieu in his capacity as an accountant, obligated Philadelphia to defend the TCCAP lawsuit and pay damages.

39.     Beaulieu and TCCAP are also entitled to an award of attorney's fees and costs incurred in this action pursuant to RSA 491:22-b.

## COUNT II (Breach of Contract)

40.     Beaulieu and TCCAP restate and reallege each of the allegations in the preceding paragraphs as if fully set forth herein.

41.     Defendant Philadelphia had a contractual duty under the terms of the insurance policy to provide a defense to and coverage for the claims brought by TCCAP against Beaulieu.

42.     The defendant Philadelphia breached its contractual duties by improperly and unlawfully refusing to provide coverage to and a defense of the TCCAP claim.

43.     Plaintiffs Beaulieu and TCCAP have been damaged as a direct and proximate result of the defendant Philadelphia's breach of its contractual obligations.

44.     Plaintiffs Beaulieu and TCCAP are entitled to recover for their damages along with the attorney's fees and costs incurred in this action.

WHEREFORE for all of the foregoing reasons plaintiffs Beaulieu and TCCAP respectfully pray that this Honorable Court:

A.  Enter judgment against defendant Philadelphia sufficient to cover the $1.3 million dollars in damages sustained by TCCAP and attorney's fees incurred in Beaulieu's of the TCCAP claim;

B.  Award attorney's fees pursuant to RSA 491:22 for the prosecution of this declaratory judgment; and

C.  For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Ron L. Beaulieu & Co., Inc. and Ron L. Beaulieu,
Individually Tri-County Community Action
Program, Inc., as Assignee of Ron Beaulieu & Co.,
Inc. and Ron L. Beaulieu Individually

By Their Attorneys,

DEVINE, MILLIMET & BRANCH, PA

Date: _____     By: _____
                                   Andrew D. Dunn, Esquire (Bar No. 696)
                                   111 Amherst Street
                                   Manchester, NH  03101
                                   (603) 669-1000

\\MHT-WORLDOX\MHTS\WDOX\DOCS\CLIENTS\017350\104181\M3558011.DOCX